# 13-2894(L) 14-115 (con)

In The

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

- *against* -

GIOVANNI PRADO, aka JOKER, ERICK ALVARADO, aka "GATO SECO",
ELENILSON ORTIZ, aka "SHORTY", EFRAIN ZUNIGA, aka PANICO,
DIEGO NINOS, aka VENENO, aka MICO, SERGIO MEJIA-BARRERA, aka PELON,
EMILIO SABALLOS, aka CABALLO, WALTER FLORES-REYES, aka SCRAPPY,
aka WALTER REYES, DAVID VALLE, aka OREO, LOUIS RUIZ, aka CHUCKY, aka
LUIS RUIZ, FRANCISCO RAMOS, aka CRUISER, CESAR LANDAVERDE, aka FLACO,
aka REBELDE, ROGER ALVARADO, aka MICHICHI, CARLOS MARTINEZ, aka CARLITO,
JOSE GUSTAVO ORELLANA-TORRES, aka DIABLITO, aka GUSTAVO JEFFERSON
ORELLANA TORRES, JIMMY SOSA, aka JUNIOR, JEREMIAS EXEQUIEL AMAYA,
aka PAYASO, JOSE SALAZAR ERAZO, aka JOSE SALAZAR ERZAO, FRANKLIN
VILLATORO, aka MONSTRO, WILBER AYALA-ARDON, aka PAJARO, aka PIOLIN,
YOBANY CALDERON, aka TEGO, ADALBERTO ARIEL GUZMAN, aka GRINGO,
RENE MENDEZ MEJIA, aka ZORRO,

*Defendants,*

VIDAL ESPINAL, aka DEMENTE, MARIO ALPHONSO HERRERA-UMANZOR,
aka PERDIDO, aka MARIO UMANZOR, YONIS ACOSTA-YANES, aka BRUJITA,
HERIBERTO MARTINEZ, aka BOXER, CARLOS ORTEGA, aka SILENCIO, aka SILENT,

---

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

## BRIEF FOR DEFENDANT-APPELLANT CARLOS ORTEGA

IRA D. LONDON
AVROM ROBIN
LAW OFFICES OF LONDON & ROBIN
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 683-8000

*On the brief:*
ELIZABETH M. JOHNSON

*Attorneys for Defendant-Appellant
Carlos Ortega*

---

Press of Fremont Payne, Inc. · 55 Broad Street, Third Floor, New York, NY 10004 · (212) 966-6570

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..............................................................................i

TABLE OF AUTHORITIES .................................................................... ii

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................2

STATEMENT OF THE CASE .................................................................2

STATEMENT OF FACTS .......................................................................3

    The Charges ........................................................................................5

    The Trial Evidence Relating
    To Count Twenty-One ........................................................................7

SUMMARY OF THE ARGUMENT .......................................................10

ARGUMENT ...........................................................................................11

    POINT I
    THE TRIAL COURT'S JURY INSTRUCTIONS
    DID NOT COMPLY WITH *ROSEMOND*
    AND THUS MR. ORTEGA'S CONVICTION
    ON COUNT TWENTY-ONE MUST BE DISMISSED ....................12

    POINT II
    THE TRIAL EVIDENCE WAS
    INSUFFICIENT TO SUPPORT MR. ORTEGA'S
    CONVICTION OF COUNT TWENTY-ONE ...................................18

    POINT III
    MR. ORTEGA JOINS IN THE
    ARGUMENTS OF MR. MARTINEZ .............................................21

CONCLUSION .......................................................................................22

i

# TABLE OF AUTHORITIES

## CASES

Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) ......................................................12

Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544 (1997).......................12, 13

Rosemond v. United States, 133 S.Ct. 2734 (2013).......................................... 13fn6

Rosemond v. United States, 134 S.Ct. 1240 (2014)..................10, 11, 13, 16, 17, 19

United States v. Botti, 711 F.3d 299 (2d Cir. 2013)..................................................12

United States v. Garcia, 587 F.3d 509 (2d Cir. 2009) ..............................................13

United States v. Griffith, 284 F.3d 338 (2d Cir. 2002)..............................................18

United States v. Jefferson, 2014 U.S. Dist. LEXIS 61135 (D.N.J. 2014)...............16

United States v. Martinez, 54 F.3d 1040 (2d Cir. 1995) ..........................................18

United States v. Tran, 519 F.3d 98 (2d Cir. 2008) ...................................................18

United States v. Viola, 35 F.3d 37 (2d Cir. 1994)....................................................13

## STATUTES

18 U.S.C. §924(c)  ...................................................................10, 13, 14, 16, 17, 19

18 U.S.C. §924(c)(1)(A)(ii) ......................................................................1, 2, 3, 4, 6

18 U.S.C. §924(c)(1)(A)(iii) ............................................................................1, 2, 4

18 U.S.C. §924(c)(1)(C)(i)...................................................................1, 2, 3, 4, 5, 6

18 U.S.C. §924(c)(1)(D)(ii) .................................................................................3, 5

18 U.S.C. §924(j)(1) ......................................................................................1, 2, 4

18 U.S.C. §1959(a)(1)......................................................................1, 2, 4

18 U.S.C. §1959(a)(3)......................................................................1, 3, 4

18 U.S.C. §1959(a)(5)...................................................................1, 2, 3, 4

18 U.S.C. §1962(c) ..........................................................................1, 2, 3

18 U.S.C. §1962(d) .............................................................................1, 3

18 U.S.C. §1963 ....................................................................................2

18 U.S.C. §1963(a) .............................................................................1, 3

18 U.S.C. §3231 ....................................................................................1

18 U.S.C. §3742(a) ...............................................................................1

28 U.S.C. §1291 ....................................................................................1

RULES

Fed. R. Crim. P. 29 ...........................................................................4, 20

Fed. R. Crim. P. 33 ...........................................................................5, 20

# JURISDICTIONAL STATEMENT

The District Court's subject matter jurisdiction was based upon 18 U.S.C. § 3231.  The factual basis of its jurisdiction was that the case is a criminal prosecution of defendant Carlos Ortega for one count of racketeering (18 U.S.C. §§ 1962(c) and 1963(a)), one count of racketeering conspiracy (18 U.S.C. §§ 1962(d) and 1963(a)), two counts of conspiracy to murder in aid of racketeering (18 U.S.C. § 1959(a)(5)), two counts of murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), two counts of discharge of a firearm during a crime of violence (18 U.S.C. § 924(c)(1)(A)(iii)), one count of use of a firearm causing death (18 U.S.C. § 924(j)(1)), one count of attempted murder (18 U.S.C. § 1959(a)(5)), one count of assault with a dangerous weapon (18 U.S.C. § 1959(a)(3)), and one count of brandishing a firearm during a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i)).

Jurisdiction in the Court of Appeals is predicated upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) in that this is an appeal from a final judgment and commitment order entered in the United States District Court for the Eastern District of New York, Joseph F. Bianco,  after a criminal jury

trial.  The defendant Carlos Ortega was sentenced on November 21, 2013,

A. 173,[1] and a timely notice of appeal was filed on January 6, 2014.  A. 179.

## ISSUES PRESENTED FOR REVIEW

1.  Were the trial court's instructions regarding aiding and abetting a violation of 18 U.S.C. § 924(c)(1)(A)(ii), brandishing a firearm during a crime of violence, in relation to count twenty-one proper in light of the recent Supreme Court decision in Rosemond v. United States, 134 S.Ct. 1240 (2014) which requires advance knowledge of the use of a firearm?

2.  Was the evidence sufficient to support the verdict as to count twenty-one of the indictment, charging Mr. Ortega with aiding and abetting a violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C) by brandishing a firearm in connection with the murder of Alberto Mario Canton Quijada?

## STATEMENT OF THE CASE

Defendant-appellant Carlos Ortega appeals his conviction after jury trial of one count of racketeering (18 U.S.C. §§ 1962(c) and 1963), one count of racketeering conspiracy (18 U.S.C. §§ 1962(d) and 1963), two counts of conspiracy to murder in aid of racketeering (18 U.S.C. § 1959(a)(5)), two counts of murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), two counts of discharge of a firearm during a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii)), one count of use of a firearm causing death (18 U.S.C. § 924(j)(1)), one count of

---

[1] References to "A. _" refer to the joint appendix to this appeal.

2

attempted murder (18 U.S.C. § 1959(a)(5)), one count of assault with a
dangerous weapon (18 U.S.C. § 1959(a)(3)), and one count of brandishing a
firearm during a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii) and
924(c)(1)(C)).  Mr. Ortega was sentenced to life plus sixty years
imprisonment.  A. 175.  The defendant, who was detained pretrial, is
currently incarcerated.

Mr. Ortega attacks in this appeal his conviction on count twenty-one
of the indictment[2] (A. 21-22) , charging brandishing a firearm during a crime
of violence, and the resulting mandatory minimum 25 year sentence running
consecutive to the sentences on all other counts as required by 18 U.S.C.
§§ 924(c)(1)(C)(i) and 924(c)(1)(D)(ii), on the grounds that the jury
instruction regarding aiding and abetting the brandishing count was
defective, and the insufficiency of the evidence to support that count.

## STATEMENT OF FACTS

This appeal arises out of Carlos Ortega's conviction on all counts in
which he was charged at trial:  one count of racketeering (18 U.S.C.
§§ 1962(c) and 1963(a)), one count of racketeering conspiracy (18 U.S.C.
§§ 1962(d) and 1963(a)), two counts of conspiracy to murder in aid of
racketeering (18 U.S.C. § 1959(a)(5)), two counts of murder in aid of

---

[2] References to the indictment refer to the redacted indictment used at trial, found at
A. 15 to A. 36.

3

racketeering (18 U.S.C. § 1959(a)(1)), two counts of discharge of a firearm during a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii)), one count of use of a firearm causing death (18 U.S.C. § 924(j)(1)), one count of attempted murder (18 U.S.C. § 1959(a)(5)), one count of assault with a dangerous weapon (18 U.S.C. § 1959(a)(3)), and one count of brandishing a firearm during a crime of violence (18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)). The remaining counts of the indictment charged only Mr. Ortega's co-defendant at trial, Heriberto Martinez.

Co-defendant Heriberto Martinez was initially indicted on April 8, 2010, in a superseding indictment (No. 10-CR-74) that named sixteen other defendants. Mr. Ortega was not charged until two years later, and was initially arraigned on a complaint on March 24, 2012 and subsequently indicted alone on April 24, 2012 in the Eastern District of New York (no. 12-CR-293 (JFB)). After pre-trial motion practice and pleas by several co-defendants, Mr. Ortega and Mr. Martinez proceeded to trial together before Judge Bianco on February 4, 2010, with the jury returning guilty verdicts on all charges against both defendants on March 21, 2013. A motion for acquittal pursuant to Fed. R. Crim. P. 29 was made and denied at the close of the government's case. A. 136-39. The motion was renewed

4

after trial and, after receiving written submissions by all parties, the court

denied that motion, as well as Mr. Ortega's motion for a new trial pursuant

to Fed. R. Crim. P. 33, on October 24, 2013.  United States v. Martinez,

2013 U.S. Dist. LEXIS 153261 (E.D.N.Y. 2013).  A. 147-69.

On November 21, 2013, Mr. Ortega was sentenced to life plus 60

years.  A. 175.  As relevant to this appeal, count twenty-one resulted in a 25

year sentence, the mandatory minimum, to run consecutively to any other

term of imprisonment, A. 171-72, 175, as required by statute.  See 18 U.S.C.

§§ 924(c)(1)(C)(i), 924(c)(1)(D)(ii).

**The Charges**

The charges in the indictment were based on Mr. Ortega's

involvement in MS-13, also known as La Mara Salvatrucha, a street gang

with roots in El Salvador.  The predicate acts underlying the racketeering

and racketeering conspiracy charges included the murder of David Sandler

and attempted murder of Aaron Galan (referred to as "John Doe" in the

indictment) on February 17, 2010 in Brentwood, New York, and the murder

of Alberto Mario Canton Quijada on March 17, 2010, in Far Rockaway,

New York, as well as conspiracies to murder Sandler and to murder Quijada.

A. 15-23.  The murders, conspiracies and attempted murder were also

charged as separate crimes in counts eight, nine, twelve, thirteen, nineteen

and twenty of the indictment. A. 13-16, 20-22. Mr. Ortega was additionally

charged with several crimes relating to the use of firearms: discharging a

firearm during the Sandler murder and attempted murder of Galan (counts

ten and fourteen), use of a firearm causing Sandler's death (count eleven),

and the brandishing of a firearm during the murder and conspiracy to murder

Quijada (count twenty-one). A. 14-15, 17, 21-22.

This appeal concerns only count twenty-one, the brandishing charge

relating to the Quijada murder, which occurred on March 17, 2010, on the

beach in Far Rockaway, Queens. A. 21-22. Count twenty-one charged a

violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i), which

provide in relevant part:

> (c)(1)(A)    [A]ny person who, during and in relation to any
> crime of violence or drug trafficking crime (including a crime
> of violence or drug trafficking crime that provides for an
> enhanced punishment if committed by the use of a deadly or
> dangerous weapon or device) for which the person may be
> prosecuted in a court of the United States, uses or carries a
> firearm, or who, in furtherance of any such crime, possesses a
> firearm, shall, in addition to the punishment provided for such
> crime of violence or drug trafficking crime. . . .
>
> (ii)    if the firearm is brandished, be sentenced to a term of
> imprisonment of not less than 7 years and; and . . .
>
> (C)    In the case of a second or subsequent conviction under
> this subsection, the person shall----
>
> (i) be sentenced to a term of imprisonment of not less than 25
> years . . . .

At sentencing, Mr. Ortega received, in addition to a life sentence, consecutive sentences of ten, twenty-five, and twenty-five years on the firearm counts, for a total of an additional 60 years beyond his life sentence. A. 171-72.

**The Trial Evidence Relating
To Count Twenty-One**

At trial, several cooperating witnesses – all members of MS-13 – testified regarding Quijada's murder. Notably, none of those witnesses were present for the killing; rather, they testified to statements made to them after the fact by other individuals. None of them testified that Mr. Ortega carried, used or possessed a gun during the killing, and no one testified to any discussion before the killing regarding the use of a gun in the killing.

Jimmy Sosa, a cooperating witness and MS-13 member, testified that about a week after Quijada's death, Mr. Ortega told him that he had been present when Quijada was killed by other MS-13 members. A. 38, 40-45. Mr. Ortega told Sosa that another MS-13 member tried to shoot Quijada, but the gun jammed. A. 45-46.

Cooperating witness Santos Joel Calderon, another MS-13 member, A. 49, 74-76, testified about his and Mr. Ortega's involvement in the events prior to Quijada's death. The night of Quijada's death was the first time Calderon met Mr. Ortega. A. 52-53. Quijada was a member of MS-13, but

7

was considered a problem due to his failure to commit crimes for the gang. A. 55-56. Calderon, Mr. Ortega and several other MS-13 members agreed on the night of March 17, 2010, to give Quijada a last chance to kill a rival gang member and subsequently took Quijada to drive around and look for a potential victim. A. 56-57. No victim was found and Quijada stated he would not shoot anyone. A. 57. This refusal was discussed by Mr. Ortega, Mr. Martinez, Calderon, and four other MS-13 members. A. 58-59. These individuals agreed that Quijada would be killed because of his refusal to commit crimes for the gang. A. 58-59. At this point, Calderon's personal involvement ended, and his further testimony regarding Quijada's death was based on what other people told him. See A. 64-65, 79, 86. MS-13 member Jeremias Amaya ("Payaso") told Calderon that he, Amaya, had tried to shoot Quijada but that the gun had jammed, so he stabbed Quijada with a machete. A. 71-73.

Carlos Martinez, another cooperating MS-13 member, testified that Mr. Ortega was part of an agreement to kill Quijada. A. 89-92. Carlos Martinez was aware of the plan to take Quijada looking for a victim, A. 94-97, and texted Quijada to meet up with other MS-13 members for that purpose. A. 97. After that, he for the first time met Mr. Ortega who was with other MS-13 members. A. 99-100. Carlos Martinez did not go along

on the hunt for victims with Quijada. A. 105. He was subsequently told that Quijada had refused to shoot anyone, and was part of a meeting which included Mr. Ortega when it was agreed that Quijada would be killed. A. 107-08. Carlos Martinez had no further participation in the killing. A. 109. He learned about the killing from Amaya, A. 119, who told him that he, Amaya, had tried to shoot Quijada but the gun had jammed, A. 114-15, and that Amaya and Carlos Martinez' brother, Diego Marroquin, stabbed Quijada. A. 115-16. Carlos Martinez did not testify that Mr. Ortega stabbed or otherwise attacked Quijada.

Additionally, Agent Renaldo Tariche of the FBI testified to statements Mr. Ortega made after his arrest, including statements about Quijada's death. According to Tariche, Mr. Ortega stated that he had discussed with other MS-13 members that Quijada "had to go" due to his refusal to commit crimes for the gang. A. 128. Mr. Ortega also told Tariche that he went to the beach with Quijada and others and that another MS-13 member tried to shoot Quijada but the gun jammed. A. 128. Quijada was then stabbed by MS-13 member Amaya, not Mr. Ortega. A. 128. Mr. Ortega was able to identify the gun that jammed as a .22 caliber. A. 128.[3] Mr. Ortega never told Tariche he participated in attacking Quijada. A. 132-34.

---

[3] Mr. Ortega also signed a written version of these statements prepared by Tariche, which

9

No witness testified regarding any advance discussion of the use of a gun in killing Quijada and none described any agreement, implicit or explicit, to use a gun in the killing. Nor did any witness testify that Mr. Ortega participated in the attack on Quijada or that he carried or used a gun on the beach. To the contrary, the testimony consistently identified another MS-13 member, Amaya, as the shooter and as the individual who carried the gun to the beach. See A. 72, 114. The only other individual identified as carrying the firearm on the beach was Mr. Martinez, who took it from Amaya after it jammed. A. 72, 115.

## SUMMARY OF THE ARGUMENT

The Supreme Court's recent decision in Rosemond v. United States, 134 S.Ct. 1240 (2014), requires that, in order to be guilty of aiding and abetting a violation of 18 U.S.C. § 924(c), a defendant must have advance knowledge that a firearm will be used in the related crime. In this case, the trial court failed to instruct the jury that Mr. Ortega must have known ahead of time that a gun would be used in the Quijada killing. Further, the evidence did not show that Mr. Ortega had such knowledge and thus was insufficient to support his conviction.

---

did not provide any differing statements about Quijada's death. A. 129-31.

## **ARGUMENT**

In its recent decision in <u>Rosemond v. United States</u>, 134 S.Ct. 1240 (2014), the Supreme Court addressed the requirements for a conviction of aiding and abetting[4] the use of a firearm in connection with a drug crime[5] under 18 U.S.C. § 924(c). In <u>Rosemond</u>, the trial court's instruction had allowed a conviction if the defendant merely knew a gun was used in the drug crime and actively participated in the drug crime. 1345 S.Ct. 1244-45. There was no requirement that he intended the gun be used or was even aware of it prior to the drug crime. The jury instruction allowed Rosemond to be convicted if, as he argued to the Court, the first time he became aware of the presence of a gun was when his co-conspirator shot at another participant in the drug transaction. <u>Id</u>. at 1244-46. He thus "knew" a gun was used during the drug crime even if he did nothing regarding any gun or was even aware his co-conspirator had a gun. <u>Id</u>.

The Supreme Court held that the jury instruction given by the trial court was erroneous since, at a minimum, it did not require advance knowledge that a gun would be used in the drug crime. <u>Id</u>. at 1251-52. In

---

[4] There was no evidence, and the government did not argue, that Mr. Ortega violated § 924(c) as a principal under count twenty-one.
[5] The standard is the same as for conviction of aiding and abetting the use of a firearm in connection with a crime of violence.

order to aid and abet the use of a firearm in a drug crime, the defendant had

to have the intent that the "specific and entire crime charged" be committed.

Id. at 1248.  It was not enough to intend that the drug crime occur; the

defendant had to also have the intent to participate in and further an *armed*

drug crime.  Id. at 1249.  An aider and abettor must know about the gun

prior to embarking on the crime, because only then does "deciding to go

ahead with his role in the venture . . . [demonstrate] his intent to aid an

*armed* offense."  Id. at 1249 (emphasis in original).  In light of the erroneous

instructions, the Court vacated Rosemond's conviction and remanded the

case.  Id. at 1252.

## POINT I

### THE TRIAL COURT'S JURY INSTRUCTIONS DID NOT COMPLY WITH *ROSEMOND* AND THUS MR. ORTEGA'S CONVICTION ON COUNT TWENTY-ONE MUST BE DISMISSED

This Court reviews the correctness of jury instructions as a matter of

law subject to de novo review.  United States v. Botti, 711 F.3d 299, 307 (2d

Cir. 2013).  An instruction is erroneous if it "misleads the jury as to the

correct legal standard."  Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.

1994).  The instruction on county twenty-one was not objected to below,

which generally results in the application of a plain error standard.  Johnson

v. United States, 520 U.S. 461, 465-66, 117 S.Ct. 1544, 1548 (1997).  Under

12

a plain error standard, reversal is permitted if a jury instruction contains "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." Id., 520 U.S. at 467, 117 S.Ct. at 1549 (internal quotes omitted). Applying the law as it exists now, the challenged instruction was erroneous and plainly so. See United States v. Garcia, 587 F.3d 509, 520 (2d Cir. 2009) (plain error determined by the law at the time of appeal). Since the erroneous jury instruction permitted a conviction on a theory that is legally impermissible after Rosemond, Mr. Ortega's substantial rights were affected. Garcia, 587 F.3d at 520 (error affects substantial right if it affected outcome in trial court). Here, however, since the error is the result of a change in the applicable law, and the failure to object resulted from a lack of "omniscience" regarding the change,[6] modified plain error analysis is appropriate. United States v. Viola, 35 F.3d 37, 42 (2d Cir. 1994), cert. denied, 513 U.S. 1198, 115 S.Ct. 1270 (1995). Under a modified plain error analysis, the government bears the burden of establishing lack of prejudice to the defendant. Id.

In this case, the trial court early on in its instructions provided a generalized aiding and abetting instruction. A. 141-42. It also instructed the jury on substantive § 924(c) offenses only regarding the first such count in

---

[6] Certiorari was not granted in Rosemond until May 28, 2013, after Mr. Ortega's conviction. Rosemond v. United States, 133 S.Ct. 2734 (2013) (granting writ).

the indictment, count five against only Mr. Martinez, relating to the use of a firearm in the murder of Vanessa Argueta. A. 143-44. When the jury was instructed regarding count twenty-one specifically, the trial court merely read the count of the indictment and referred the jury to its instructions given on earlier counts both regarding the § 924(c) offense and aiding and abetting. A. 146. The instructions referred to in relevant part were as follows:

> In order to prove the crime charged in Count Five [unlawful use of a firearm], the government must establish the following two elements beyond a reasonable doubt:
>
> First, that the defendant committed a crime of violence;
>
> and second, that the defendant either knowingly and intentionally used or carried a firearm during and in relation to the commission of the crime of violence, or knowingly and intentionally possessed a firearm in furtherance of that crime, or aided and abetted another person doing so. . . .
>
> The second element, use, carrying or possession of a firearm. As for the second element, the government must prove beyond a reasonable doubt that the defendant either knowingly and intentionally used or carried a firearm during and in relation to the commission of the relevant crimes of violence, or knowingly and intentionally possessed a firearm in furtherance of the crimes. . . .
>
> Finally, to satisfy this element, you must find that the defendant carried or possessed the firearm knowingly and intentionally. I have already instructed you on what is meant by "knowingly and intentionally." In this context, it also means that the defendant knew that the weapon was a firearm; however, the government is not required to prove that he knew he was breaking the law.

14

A. 143-44.

        Certain counts charge the defendants with violating the "aiding and abetting statute." The federal definition of "aiding and abetting" is contained in Section 2 of Title 18 of the United States Code, which provides, I'm now reading from the statement [sic]:

> A.      Whoever commits an offense . . . or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> B.      Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

        Under this statute, it is not necessary for the Government to show that the defendant himself physically committed the crime with which he is charged in order for you to find him guilty. This is because under the law, a person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself.

.      .      .

        In order to be found guilty of aiding and abetting the commission of a crime, the Government must prove beyond a reasonable doubt that the defendant:

        First, knew that the crime charged was to be committed or was being committed;

        Second, knowingly did some act for the purpose of aiding, commanding or encouraging the commission of that crime; and

        Third, acted with the intention of causing the crime charged to be committed.

        Before the defendant may be found guilty as an aider or an abettor to the crime, the Government must also prove,

beyond a reasonable doubt, that someone committed each of the essential elements of the offense charged, as detailed for you in the instructions for the crime the defendant is alleged to have been aided and abetted.

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed, is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime.

The government must prove that the defendant knowingly and deliberately associated himself with the crime in some way as a participant someone who wanted the crime to be committed, not as a mere spectator.

A. 141-42.

As the Supreme Court held in <u>Rosemond,</u> it is essential to a § 924(c) aiding and abetting conviction that the defendant's knowledge regarding the use of a gun be "foreknowledge," 134 S.Ct. at 1249-50, knowledge "obtained at a time the accomplice can do something with it" – that is, choose to participate in an armed crime or not. <u>Id.</u> Of course, trial courts instructing juries prior to the <u>Rosemond</u> decision would not necessarily tailor their instructions to this issue. <u>See</u> <u>United States v. Jefferson,</u> 2014 U.S. Dist. LEXIS 61135, *31-34 (D.N.J. 2014) (noting that Third Circuit pattern instruction pre-<u>Rosemond</u> did not require a finding of "foreknowledge").

16

When an instruction permits a conviction based on facts that do not make out the charged offense, it is defective and the conviction should be vacated. Here, the trial court's instruction required knowledge on the part of Mr. Ortega, but did not specify at what point, temporally, in the criminal transaction the knowledge was required. For example, in describing a § 924(c) violation, the trial court instructed the jury that it must find that a person "knowingly and intentionally used or carried a firearm *during* and in relation to the commission of the crime of violence." A. 143 (emphasis added). The aiding and abetting instruction required that the defendant "knew that the crime charged was to be committed or *was being committed*." A. 141 (emphasis added). These instructions allowed the jury to convict Mr. Ortega even if they found that he only gained the knowledge that a gun was brandished in connection with Quijada's death <u>during</u> the crime, because in that case he would know that a § 924(c) violation "was being committed" and that someone was using a gun "during" the crime of violence. Such instructions violated the standard set forth in <u>Rosemond</u> and require a reversal.

**POINT II**

**THE TRIAL EVIDENCE WAS
INSUFFICIENT TO SUPPORT MR. ORTEGA'S
CONVICTION OF COUNT TWENTY-ONE**

Mr. Ortega's conviction on count twenty-one should also be reversed because the trial evidence was insufficient to support the verdict. There was no evidence presented at trial to support a finding that Mr. Ortega knowingly and intentionally aided and abetted the brandishing of a firearm in connection with Quijada's killing because there was no evidence of his "foreknowledge" that a gun would be used.

A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Griffith, 284 F.3d 338, 348 (2d Cir.), cert. denied, 537 U.S. 986, 123 S.Ct. 461 (2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.) (internal citation omitted), cert. denied, 516 U.S. 1001, 116 S.Ct. 545 (1994). This Court will reverse only if it concludes that "no rational factfinder could have found the crimes charged proved beyond a

18

reasonable doubt." <u>United States v. Tran</u>, 519 F.3d 98, 105 (2d Cir.), <u>cert.</u> <u>denied</u>, 555 U.S. 863, 124 S.Ct. 142 (2008) (internal quotation marks omitted).

The § 924(c) charge in count twenty-one referred specifically to the murder and conspiracy to murder Quijada. A. 34-36. Thus, in order to be convicted of count twenty-one, there must have been sufficient evidence to justify a finding beyond a reasonable doubt that Mr. Ortega specifically and knowingly intended not just that Quijada be killed, but that a gun be used in furtherance of that killing.[7] There must also be evidence that Mr. Ortega knew a gun would be used prior to his participation the crime. <u>Rosemond</u>, 134 S.Ct. at 1249-50. And while the record contains references to Mr. Ortega urging Quijada to use a gun and agreeing to kill Quijada because Quijada would not use one, A. 107-08, there is no evidence of any discussion of or decision to use a gun in killing Quijada prior to Amaya's attempt to shoot Quijada on the beach.[8] An individual is not guilty of a § 924(c) violation if the first time he becomes aware that a gun is being used is during the underlying crime. <u>Rosemond</u>, 134 S.Ct. at 1252.

---

[7] Evidence showing that Mr. Ortega intended that Quijada use a gun to murder an unidentified victim is not sufficient.

[8] One witness, Jimmy Sosa, testified that Mr. Ortega told him the decision to use the gun was made after arriving at the beach. A. 45.

In rejecting Mr. Ortega's Rule 29 and 33 motions relating to this count, the trial court relied upon evidence that showed that Mr. Ortega had possessed a gun earlier in the evening, prior to Quijada's unsuccessful hunt for a potential victim. A. 166. Further, the trial court stated, Mr. Ortega must have intended that the gun subsequently be used to kill Quijada. A. 166. The evidence cited to show that Mr. Ortega was aware and intended that the gun would be used to kill Quijada was testimony from Carlos Martinez that he believed the gun was loaded in Mr. Ortega's presence after the decision was made to kill Quijada. A. 166. That testimony, in context, was:

> Q.    Okay. And who went to go pick up Baby Blue [Quijada]?
>
> A.    Boxer [Mr. Martinez], Silencio [Mr. Ortega], my brother Diego, Payaso [Amaya] and Michichi.
>
> Q.    What happened to Gabriel, Payaso's friend, that joined you at the train station?
>
> A.    He stayed with us at Payaso's apartment.
>
> Q.    Okay. And what happened after the group left to go pick up Baby Blue?
>
> A.    There were 10, 15 – rather 10 minutes at the parking of the long-term, I don't know what they were doing. I think they were loading the gun.
>
> Q.    And how do you know that they were in the parking lot of the laundromat for ten or fifteen minutes?

20

A.    Well, because from Payaso's apartment, from his room you can practically see all of Far Rockaway, so you can see downstairs, the parking lot.

Q.    Can you see the parking lot of the laundromat?

A.    Yes.

A. 109-110.  It is clear that Martinez did not actually know whether the gun was being loaded at that time, because, as he testified, "I don't know what they were doing," and "I *think* they were loading the gun."  A. 110 (emphasis added).  He was merely speculating as to what might have been happening.[9]  There is simply no evidence regarding an advance discussion of the gun in connection with Quijada's death, or any specific intent or knowledge beforehand that a gun would be used in that killing on the part of Mr. Ortega.  Not only was there insufficient evidence to support a finding of guilt on count twenty-one, there was simply no evidence to support the essential element of knowledge and intent.  Thus, Mr. Ortega's conviction on count twenty-one must be reversed.

## POINT III

### MR. ORTEGA JOINS IN THE ARGUMENTS OF MR. MARTINEZ

To the extent they are applicable to him, Mr. Ortega incorporates and joins in the arguments of co-defendant-appellant Heriberto Martinez.

---

[9] In fact, since the gun had not been used earlier in the evening, it is unlikely that it was being loaded again.

21

## <u>CONCLUSION</u>

For the foregoing reasons, Carlos Ortega's conviction on count

twenty-one should be vacated and his case remanded for resentencing, or in

the alternative remanded for a new trial on count twenty-one.

Dated:  New York, New York
      May 23, 2014

            Respectfully submitted,

            LAW OFFICES OF LONDON & ROBIN

            By:     /s/
               IRA D. LONDON
               AVROM ROBIN

            99 Park Avenue, Suite 1600
            New York, NY 10016
            Tel:      212-683-8000
            Fax:     212-683-9422
            Email:   iradlondon@aol.com
                     avrom@mindspring.com

            *Attorneys for Defendant-Appellant*
             *Carlos Ortega*

cc:  All Counsel via ECF