# 13-2894-CR(L)

## 13-3877-cr(CON), 14-115-cr(CON), 14-143-cr(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

v.

GIOVANNI PRADO, AKA JOKER, ERICK ALVARADO, AKA "GATO SECO", ELENILSON ORTIZ, AKA "SHORTY", EFRAIN ZUNIGA, AKA PANICO, DIEGO NINOS, AKA VENENO, AKA MICO, SERGIO MEJIA-BARRERA, AKA PELON, EMILIO SABALLOS, AKA CABALLO, WALTER FLORES-REYES, AKA SCRAPPY, AKA WALTER REYES, DAVID VALLE, AKA OREO, LOUIS RUIZ, AKA CHUCKY, AKA LUIS RUIZ, FRANCISCO RAMOS, AKA CRUISER,

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court
for the Eastern District of New York (Central Islip)*

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## HERIBERTO MARTINEZ, AKA BOXER

ELIZABETH E. MACEDONIO, P.C.
80 Broad Street, Suite 1900
New York, New York 10007
212-257-6410

*and*

RANDALL D. UNGER, ESQ.
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361
718-279-4500

*Attorneys for Defendant-Appellant
Heriberto Martinez, AKA Boxer*

Cesar Landaverde, AKA Flaco, AKA Rebelde, Roger Alvarado, AKA Michichi, Carlos Martinez, AKA Carlito, Jose Gustavo Orellana-Torres, AKA Diablito, AKA Gustavo Jefferson Orellana Torres, Jimmy Sosa, AKA Junior, Jeremias Exequiel Amaya, AKA Payaso, Jose Salazar Erazo, AKA Jose Salazar Erzao, Franklin Villatoro, AKA Monstro, Wilber Ayala-Ardon, AKA Pajaro, AKA Piolin, Yobany Calderon, AKA Tego, Adalberto Ariel Guzman, AKA Gringo, Rene Mendez Mejia, AKA Zorro,

*Defendants,*

*and*

Vidal Espinal, AKA Demente, Mario Alphonso Herrera-Umanzor, AKA Perdido, AKA Mario Umanzor, Yonis Acosta-Yanes, AKA Brujita, Heriberto Martinez, AKA Boxer, Carlos Ortega, AKA Silencio, AKA Silent,

*Defendants-Appellants.*

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES................................................................... | ii |
| INTRODUCTION................................................................................. | 1 |

ARGUMENT:

POINT I

    THE MURDERS OF VANESSA ARGUETA, NESTOR MORENO AND MARIO QUIJADA WERE COMMITTED FOR PERSONAL REASONS AND DID NOT ESTABLISH THE APPELLANT'S GUILT OF THE CRIMES OF MURDER OR CONSPIRACY TO MURDER IN AID OF RACKETEERING (Replying to Ans. Br. Point I).................................................................... 2

POINT II

    THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THE APPELLANT MURDERING AND CONSPIRING TO MURDER VANESSA ARGUETA (Replying to Ans. Br. Point II)............................................... 6

POINT III

    THE EMPANELING OF AN ANONYMOUS JURY IMPAIRED THE APPELLANT'S PRESUMPTION OF INNOCENCE AND DEPRIVED HIM OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL (Replying to Ans. Br. Point III).......................................................................... 8

CONCLUSION..................................................................................... 10

CERTIFICATION................................................................................. 11

## TABLE OF AUTHORITIES

Page

Cases

*United States v. Bradley*, 869 F.2d 121 (2d Cir. 1989)............................. 7

*United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004)................................. 3, 5

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992)....................... 4

*United States v. Farmer*, 583 F.3d 131 (2d Cir. 2009)............................. 5

*United States v. Gaviria*, 740 F.2d 174 (2d Cir. 1984)............................. 7

*United States v. Melendez*, 743 F. Supp. 134 (E.D.N.Y. 1990)................. 9

*United States v. Provenzano*, 615 F.2d 37 (2d Cir. 1980)........................ 7

*United States v. Rodriguez*, 392 F.3d 539 (2d Cir. 2004)......................... 8

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009).............................. 9

Statutes & Other Authorities

18 U.S.C. § 1959(a)................................................................................ 3, 6

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-------------------------------------------------------x
UNITED STATES OF AMERICA,

                Appellee,

  -against-                                13-2894(L), 13-3877(CON),
                                          14-0115(CON), 14-0143(CON)

HERIBERTO MARTINEZ, aka
BOXER,

                Defendant-Appellant.
-------------------------------------------------------x

**REPLY BRIEF FOR DEFENDANT-APPELLANT**
**HERIBERTO MARTINEZ**

**INTRODUCTION**

Heriberto Martinez (hereinafter "appellant") submits this brief in reply to the government's answering brief ("Ans. Br.") which attempts to controvert the appellant's most fundamental arguments. Despite the government's contentions, it cannot be concluded that the murders with which the appellant was charged were committed for the purpose of gaining entrance to or maintaining or increasing his position in the charged racketeering enterprise; that the appellant bore any responsibility for the murder of Vanessa Argueta, or that an anonymous jury was warranted in this case. For all of these reasons, the appellant's conviction should be

1

vacated.

# ARGUMENT

## POINT I

THE MURDERS OF VANESSA ARGUETA, NESTOR MORENO AND MARIO QUIJADA WERE COMMITTED FOR PERSONAL REASONS AND DID NOT ESTABLISH THE APPELLANT'S GUILT OF THE CRIMES OF MURDER OR CONSPIRACY TO MURDER IN AID OF RACKETEERING (Replying to Ans. Br. Point I).

In arguing that the evidence was legally sufficient to establish the appellant's guilt of the crime of murder in aid of racketeering, the government continually points to the appellant's membership in the MS-13 gang to show that the murders of Vanessa Argueta, Nestor Moreno and Mario Quijada were committed for the purpose of maintaining or increasing his position in that enterprise. However, the record does not support this contention.

It was never disputed that the appellant was a member of the MS-13 gang. Nor was it disputed that at times, he engaged in unlawful activities in connection with his membership in MS-13. However, contrary to the government's urgings, not every act in which the appellant participated was motivated by his desire to maintain or increase his position in MS-13. Indeed, even when viewing the evidence in the light most favorable to the government, it is clear that the murders of

Argueta, Moreno and Quijada were committed for personal reasons and did not establish the appellant's guilt under 18 U.S.C. § 1959(a).

While Juan Garcia's membership in the Coronados clique of MS-13 may have suggested that the murder of former girlfriend Argueta was gang-related, the actual killing of Argueta appeared to be purely personal in nature. Argueta's reasons for encouraging rival gang members to assault Garcia appeared to be sparked by jealousy and resentment after she learned that he had a new girlfriend. Similarly, it appeared that Garcia's decision to have Argueta murdered stemmed from the personal animus he harbored towards Argueta whom he believed had sent several men to his home to attack him. Regardless of whether Garcia or Argueta had acted on accurate information, what is certain is that Garcia's killing of Argueta was motivated by anger and did not fall within the ambit of 18 U.S.C. § 1959(a). *See United States v. Bruno*, 383 F.3d 65, 85 (2d Cir. 2004).

The murder of Nestor Moreno was no less brutal or senseless than the murder of Argueta. However, as was the case with Argueta, his killing appeared to be motivated by the anger and humiliation the appellant experienced when Moreno sprayed him in the face with pepper spray during an altercation that occurred at a bar. Significantly, none of the perpetrators of the Moreno murder suggested that they avenge Moreno's "insult" by returning to the bar to kill him, other than the appellant.

3

This was not particularly surprising since it appears that none of the individuals who were involved in the altercation with Moreno perceived that his pepper spraying of the appellant constituted an affront to MS-13. Indeed, since there was no evidence establishing that Moreno knew that the appellant or his drinking companions were MS-13 members when he pepper sprayed him, there was no reason to retaliate against him, other than the appellant's purely personal animus towards him.

Nor could it be said that the murder of Moreno was intended to send a message to anyone who might fail to show sufficient respect for MS-13 members. The perpetrators planned their attack on Moreno to ensure that there would be no witnesses to the murder. Following the shooting, the perpetrators chanted "La Mara" after they were inside a vehicle fleeing from the scene so that nobody would know that any member of MS-13 was responsible for the attack.

In short, the mere fact that Moreno was murdered by members of MS-13 did not establish beyond a reasonable doubt that the appellant committed the crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership. *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992).

In his opening brief in this case, the appellant argued that the murder of fellow gang member Mario Quijada was not committed for the purpose of enabling

4

the appellant to maintain or increase his position in MS-13 since it was not officially sanctioned and therefore subjected the appellant and every other participant in the killing to being targeted for murder themselves through the issuance of a "green light" (an order to kill on sight). In response, the government cites this Court's decision in *United States v. Farmer*, 583 F.3d 131 (2d Cir. 2009) and contends that the appellant's argument is unavailing because "the VICAR inquiry concerns not how a defendant's position in the enterprise was actually affected by virtue of his involvement in the crime but instead what the defendant's purpose was, with respect to his position, in engaging in the criminal activity in the first instance" (Ans. Br. at 31). But this argument misses the point.

As a member of MS-13, the appellant would have surely known that killing a fellow gang member without first obtaining the necessary authorization would subject himself to the severest sanction, a circumstance that would have obviously diminished his position in the MS-13 enterprise. *See United States v. Bruno*, 383 F.3d at 86. Given this reality, it cannot be concluded that the killing of Quijada was done for the purpose of maintaining or increasing the appellant's position in the charged enterprise.

In sum, no rational jury could have concluded that the murders of Nestor Moreno, Vanessa Argueta and Mario Quijada fell within the scope of 18 U.S.C. §

1959(a). The appellant's conviction of murder in aid of racketeering and conspiracy to commit murder in aid of racketeering must therefore be vacated.

**POINT II**

> THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THE APPELLANT OF MURDERING AND CONSPIRING TO MURDER VANESSA ARGUETA (Replying to Ans. Br. Point II).

In urging this Court to uphold the appellant's conviction for murdering and conspiring to murder Vanessa Argueta, the government argues that the evidence established that the appellant "explicitly sanctioned Argueta's murder and provided the murder weapon" and that following his arrest, he stated to a detective that Argueta had been shot "because she had tried to have Cruzito [Garcia] killed a month earlier by the 18th Street Gang" (Ans. Br. at 38-39). But the record does not support the government's contentions.

The only evidence advanced in support of the argument that the appellant sanctioned the murder of Argueta was the testimony of Carla Santos who claimed that when Garcia informed him of his problems with Argueta, the appellant supposedly stated that he should "fix it" and "do what they have to do". Assuming *arguendo* that Santos's account regarding this conversation was accurate, her testimony fell short of establishing that the appellant had authorized Garcia to murder Argueta. Even in the

6

light most favorable to the government, Santos's testimony that the appellant had advised Garcia to fix the problem he had with Argueta did not establish his complicity in Argueta's murder. His statements contained no suggestion that Garcia should harm Argueta in any way. And since the government offered no testimony to show that the expressions "fix it" or "do what they have to do" were coded statements signifying an authorization to kill Argueta, the jury could not have concluded beyond a reasonable doubt that the appellant had the specific intent to murder or conspire to murder Argueta. *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir. 1984); *United States v. Provenzano*, 615 F.2d 37, 44 (2d Cir. 1980).

Nor could the jury have convicted the appellant for the murder of Argueta because he assisted Garcia after the crime was committed or because he had made an after-the-fact statement that Argueta's killing was justified. His assistance to Garcia in helping him to avoid apprehension may have made the appellant guilty of being an accessory after the fact. However, it did not establish that he had joined a conspiracy to murder Argueta while it was still in operation. *United States v. Bradley*, 869 F.2d 121, 122 (2d Cir. 1989). And his statement to Santos that Argueta was somehow responsible for her own death did not even suggest that he took credit for Argueta's murder, or that he bore responsibility for that offense in any way. In any event, it is clear that the government failed to prove that the appellant knew of the existence of

7

the scheme to murder Argueta or that he knowingly joined and participated in her killing. *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004). His conviction for murdering Argueta, conspiring to murder her and discharging a firearm during her murder must therefore be vacated.

# POINT III

THE EMPANELING OF AN ANONYMOUS JURY IMPAIRED THE APPELLANT'S PRESUMPTION OF INNOCENCE AND DEPRIVED HIM OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL (Replying to Ans. Br. Point III).

In arguing that the district court was correct when it decided to empanel an anonymous jury, the government notes that members of the MS-13 gang had engaged in "a pattern of violence" that would cause jurors to reasonably fear for their own safety (Ans. Br. at 43-43); that the serious nature of the charged crimes warranted such action (Ans. Br. at 44), and that evidence that other MS-13 members had attempted to intimidate witnesses in other cases provided further justification for such action (Ans. Br. at 48-49). It is submitted that none of these arguments is persuasive.

In the first place, while the charged crimes were unquestionably serious, the government presented no evidence to suggest that the appellant or any of his co-defendants had ever attempted to tamper with jurors, or had any inclination to do so. Thus, the district court had no basis for concluding that there was a "strong reason to

believe the jury need[ed] protection". *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009). Indeed, it appears that in determining that an anonymous jury was warranted, the district court glossed over the lack of any evidence to suggest that the appellant or his co-defendants might engage in jury tampering, or that they had the access or means to engage in such conduct. *United States v. Melendez*, 743 F. Supp. 134, 137 (E.D.N.Y. 1990).

Furthermore, references to acts of witness intimidation committed by other MS-13 members in other cases did not bolster the argument that the appellant or his co-defendants had forfeited their right to select a jury of their peers whose identities weren't hidden. In short, in the absence of evidence that the appellant or his co-defendants had participated in such offenses, there appears to have been no basis for believing that the jurors' safety would be jeopardized if their identities were disclosed.

In sum, the district court erred when it granted the government's motion and empaneled an anonymous jury and that error had the effect of impairing his presumption of innocence and denying him his due process right to a fair trial. The appellant's conviction should therefore be vacated and the case remanded for a new trial.

## CONCLUSION

For all of the foregoing reasons, along with those set forth in his principal brief, the appellant's conviction should be vacated.

Dated:  New York, New York
        July 20, 2015

                                      Respectfully submitted,

                                      /s/ Elizabeth E. Macedonio
                                      ELIZABETH E. MACEDONIO
                                      Counsel for Defendant-Appellant
                                      Heriberto Martinez
                                      80 Broad Street, Suite 1900
                                      New York, New York 10004
                                      (212) 257-6410

Randall D. Unger
Of counsel

## CERTIFICATION

## Pursuant to Rule 32 (a) (7) (B)

Randall D. Unger, Esq., co-counsel for defendant-appellant, certifies that the foregoing defendant-appellant's reply brief complies with the type-volume limitations set forth in FRAP 32 (a) (7) (B) in that it contains 2,046 words.

Dated:    Bayside, New York
            July 20, 2015

                                    /s/ Randall D. Unger
                                RANDALL D. UNGER