# 13-2894(L) 14-115 (con)

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*- against -*

GIOVANNI PRADO, aka JOKER, ERICK ALVARADO, aka "GATO SECO",
ELENILSON ORTIZ, aka "SHORTY", EFRAIN ZUNIGA, aka PANICO,
DIEGO NINOS, aka VENENO, aka MICO, SERGIO MEJIA-BARRERA, aka PELON,
EMILIO SABALLOS, aka CABALLO, WALTER FLORES-REYES, aka SCRAPPY,
aka WALTER REYES, DAVID VALLE, aka OREO, LOUIS RUIZ, aka CHUCKY, aka
LUIS RUIZ, FRANCISCO RAMOS, aka CRUISER, CESAR LANDAVERDE, aka FLACO,
aka REBELDE, ROGER ALVARADO, aka MICHICHI, CARLOS MARTINEZ, aka CARLITO,
JOSE GUSTAVO ORELLANA-TORRES, aka DIABLITO, aka GUSTAVO JEFFERSON
ORELLANA TORRES, JIMMY SOSA, aka JUNIOR, JEREMIAS EXEQUIEL AMAYA,
aka PAYASO, JOSE SALAZAR ERAZO, aka JOSE SALAZAR ERZAO, FRANKLIN
VILLATORO, aka MONSTRO, WILBER AYALA-ARDON, aka PAJARO, aka PIOLIN,
YOBANY CALDERON, aka TEGO, ADALBERTO ARIEL GUZMAN, aka GRINGO,
RENE MENDEZ MEJIA, aka ZORRO,

*Defendants,*

VIDAL ESPINAL, aka DEMENTE, MARIO ALPHONSO HERRERA-UMANZOR,
aka PERDIDO, aka MARIO UMANZOR, YONIS ACOSTA-YANES, aka BRUJITA,
HERIBERTO MARTINEZ, aka BOXER, CARLOS ORTEGA, aka SILENCIO, aka SILENT,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT CARLOS ORTEGA

*On the brief:*
ELIZABETH M. JOHNSON

IRA D. LONDON
AVROM ROBIN
LAW OFFICES OF LONDON & ROBIN
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 683-8000

*Attorneys for Defendant-Appellant
Carlos Ortega*

Press of Fremont Payne, Inc. · 55 Broad Street, Third Floor, New York, NY 10004 · (212) 966-6570

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ...................................................................... ii

Preliminary Statement ............................................................................. 1

Argument ................................................................................................. 1

POINT I
THE TRIAL COURT'S JURY INSTRUCTIONS
ON COUNT TWENTY-ONE WERE ERRONEOUS ....................................... 1

POINT II
THE TRIAL EVIDENCE WAS
INSUFFICIENT TO SUPPORT MR. ORTEGA'S
CONVICTION OF COUNT TWENTY-ONE........................................................ 4

POINT III
MR. ORTEGA JOINS IN THE
ARGUMENTS OF MR. MARTINEZ
CONCERNING THE ANONYMOUS JURY...................................................... 9

POINT IV
THE EVIDENCE WAS INSUFFICIENT TO
ESTABLISH THAT THE KILLING OF
QUIJADA WAS DONE TO FURTHER OR MAINTAIN
MR. ORTEGA'S POSITION IN THE RICO ENTERPRISE ........................... 9

CONCLUSION ................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Anderson v. Branen</u>, 17 F.3d 552 (2d Cir. 1994)....................................................... 1

<u>Rosemond v. United States</u>, 134 S.Ct. 1240 (2014)......................................... passim

<u>United States v. Bruno</u>, 383 F.3d 65 (2d Cir. 2004) ................................................ 10

<u>STATUTES</u>

18 U.S.C. §924(c) ...................................................................................................... 2

18 U.S.C. §924(c)(1)(A)(ii)........................................................................................ 8

18 U.S.C. §924(c)(1)(C)(i) ......................................................................................... 8

18 U.S.C. §1959(a)(1) ............................................................................................... 1

18 U.S.C. §1959(a)(5) ............................................................................................... 1

## Preliminary Statement

Defendant-appellant Carlos Ortega submits this reply memorandum in further support of his appeal of his conviction and sentence. Mr. Ortega's opening brief established that his conviction on count twenty-one must be reversed and his sentence accordingly reduced. Further, he joins in the arguments of his co-defendant, Heriberto Martinez, that the verdict in its entirety must be reversed due to the improper empanelling of an anonymous jury, and that convictions under 18 U.S.C. § 1959(a)(5) and 18 U.S.C. § 1959(a)(1) relating to the killing of Alberto Mario Canton Quijada must be reversed because the killing was not done in order to maintain or increase Mr. Ortega's position in a racketeering enterprise.

## Argument

## POINT I

### THE TRIAL COURT'S JURY INSTRUCTIONS ON COUNT TWENTY-ONE WERE ERRONEOUS

The jury instructions on count twenty-one, charging Mr. Ortega with aiding and abetting the use of a gun in connection with Quijada's murder, misled the jury "as to the correct legal standard" and thus were erroneous. Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994).

In Rosemond v. United States, 134 S.Ct 1240 (2014), the Supreme Court held that in order to be convicted of aiding and abetting a violation of

18 U.S.C. § 924(c), a defendant must have had "advance knowledge" that a gun would be used in the underlying offense. 134 S.Ct. at 1243. Jury instructions that do not require a finding of this "advance knowledge" are erroneous. Id.

Here, the trial court's instructions, issued prior to the Rosemond decision, did not require advance knowledge of the use of a gun. The jury instructions did not adequately differentiate between "advance knowledge" and knowledge gained during the crime, because they required only a finding that the gun be used "during" the crime of violence, A. 143[1], and that an aider and abettor knew that the crime "was to be committed or was being committed." A. 141.

The government asserts that the instructions were adequate because the jury was required to find that Mr. Ortega "acted with the intention of causing the crime charged to be committed." Gov't Brief at 62 (quoting A. 141). As the government concedes, this instruction did not explicitly require the foreknowledge required by Rosemond. Gov't Brief at 63. Especially since the evidence here, like that in Rosemond, supported a finding that the first time Mr. Ortega became aware of a gun was during the

---

[1] References to "A. ____" are to the joint appendix filed by Mr. Ortega on May 23, 2014. References to "Tr. ___" are to the trial transcript. References to "Gov't Brief" are to the Brief for the United States filed July 8, 2015.

2

crime of violence, it was essential that the jury instructions clearly, correctly, and explicitly explained the knowledge requirements of the charged crime. As explained in <u>Rosemond</u>, knowledge gained during the crime is not necessarily sufficient to support a finding of intent, because at that point the defendant "may already have completed his acts of assistance" or may have no realistic ability to withdraw after he learns of the presence of a gun. 134 S.Ct. at 1249. Nothing in the instructions given here guided the jury into a careful examination of the timing of Mr. Ortega's knowledge required by <u>Rosemond</u>. Rather, it permitted the jury to find that, based on his awareness "during the crime," A. 143, that a gun was present, Mr. Ortega intended that the gun be used in the crime – even if by the time he gained that knowledge, his participation was over or he had no safe option of withdrawing. <u>See</u> 134 S.Ct. at 1251. The jury instruction on this element of count twenty-one was clearly erroneous.

3

## POINT II

## THE TRIAL EVIDENCE WAS INSUFFICIENT TO SUPPORT MR. ORTEGA'S CONVICTION OF COUNT TWENTY-ONE

In order to sustain Mr. Ortega's conviction on count twenty-one, aiding and abetting the brandishing of a firearm in connection with the Quijada murder, there must have been sufficient evidence to justify a finding beyond a reasonable doubt that Mr. Ortega specifically and knowingly intended not just that Quijada be killed, but that a gun be used in furtherance of that killing. There must also be evidence that Mr. Ortega knew a gun would be used prior to his participation in the crime. Rosemond, 134 S.Ct. at 1249-50. The government's brief ignores the significant problems in the proof offered to support Mr. Ortega's conviction on count twenty-one.

The trial evidence relating to Mr. Ortega's participation in the killing of Quijada was sparse but fairly consistent. No person with first-hand knowledge of the murder testified – rather, Mr. Ortega's post-arrest statement concerning the killing was introduced into evidence, A. 128, 132-34, and two cooperating MS-13 members testified as to what they had been told about the killing by Mr. Ortega and other individuals who had been present when it occurred.[2] A. 38, 40-46, 64-65, 71-73, 79, 86, 114-16, 119.

---

[2] Mr. Martinez' post-arrest statement was also introduced, but it did not refer to

4

All of the evidence described Mr. Ortega as essentially a bystander to the killing. Although he agreed that Quijada had to die and went with the group that killed him to the beach where the killing took place, he did not shoot or stab Quijada, and never touched the gun at issue. A. 72, 114-16.

It is essential to a conviction on this count that the evidence demonstrate that Mr. Ortega had "foreknowledge" regarding the use of a gun, 134 S.Ct. at 1249-50, knowledge "obtained at a time [he could] do something with it" – that is, choose to participate in an armed crime or not. Id. Knowledge gained during the course of the crime will not satisfy this standard if, by the time the gun appeared, Mr. Ortega had "already . . . completed his acts of assistance; or . . . at that late point [had] no realistic opportunity to quit the crime." Id.

The government offers two separate times in the course of the conspiracy to kill Quijada at which Mr. Ortega could have become aware that a gun was to be used or brandished in that killing and subsequently deliberately chose to aid and abet the brandishing of a firearm in connection with Quijada's killing -- either in the parking lot with the group prior to picking up Quijada to go to the beach or when another participant, Jeremias Amaya, pulled the gun and attempted to shoot Quijada on the beach. Gov't

Mr. Ortega. Tr. 2298-2302.

5

Brief at 68.  However, when examined closely the evidence cannot support either of these theories.

The only trial evidence that supports the government's theory that Mr. Ortega became aware of and agreed to the planned use of a gun in Quijada's killing in the parking lot came from an MS-13 cooperating witness, Carlos Martinez:

> Q.     Okay.  And who went to go pick up Baby Blue [Quijada]?
>
> A.     Boxer [Mr. Martinez], Silencio [Mr. Ortega], my brother Diego, Payaso [Amaya] and Michichi.
>
> Q.     What happened to Gabriel, Payaso's friend, that joined you at the train station?
>
> A.     He stayed with us at Payaso's apartment.
>
> Q.     Okay.  And what happened after the group left to go pick up Baby Blue?
>
> A.     There were 10, 15 – rather 10 minutes at the parking of the long-term, **I don't know what they were doing**.  **I think** they were loading the gun.

A. 109-110 (emphasis added).  Martinez did not actually know what was happening in the parking lot and so his testimony cannot support a finding that Mr. Ortega in the parking lot consciously chose to participate in both the killing of Quijada and the use or brandishing of a gun in connection with that killing.  In fact, Mr. Ortega told another MS-13 member, Jimmy Sosa, that no decision to use a gun in the killing was made at the parking lot.  A.

6

45.  The government points to no other evidence relating to Mr. Ortega that
suggests he was aware that a gun was to be used in the killing of Quijada
before the group arrived at the beach.[3]  Even Mr. Ortega's own statement –in
which he did not hesitate to incriminate himself – does not indicate that he
was aware of a gun being present prior to Amaya's trying to shoot Quijada.
See A. 127-28, 131.

Similarly, the evidence offered regarding what happened on the beach
when Quijada was killed does not support a theory that Mr. Ortega
deliberately intended and chose to participate in the brandishing of a gun in
connection with Quijada's murder.  Rather, the testimony described Amaya
as trying to shoot Quijada and then, after the gun jammed, stabbing him with
a machete.  A. 71-73.  There was also evidence that Mr. Martinez stabbed
and kicked Quijada.  Tr. 2301-02.  There was also testimony that another
person, Diego Marroquin, stabbed Quijada with a smaller knife.  A. 16.
There was no testimony that Mr. Ortega stabbed, shot or otherwise injured
Quijada in any way, or otherwise assisted in the killing subsequent to the
appearance of the gun on the beach. The evidence shows that Mr. Ortega's
knowledge of the use of a gun in the Quijada killing came so late in the

---

[3] The government emphasizes that the gun at issue was used in other killings by
Mr. Martinez' clique – those of Vanessa Argueta and Nestor Moreno.  Gov't Brief at 68-
69.  Mr. Ortega was not involved in any of those killings, nor was he a member of the
clique which owned the gun.

7

criminal transaction that he had both already "completed his acts of assistance" and had "no realistic opportunity to quit the crime," Rosemond, 134 S.Ct. at 1249, and as a result he did not have the knowledge or intent necessary for a conviction under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(C)(i).

The government suggests that the "various and diverse wounds" on Quijada's body were sufficient to support a finding beyond a reasonable doubt that Mr. Ortega participated in the actual killing of Quijada after a gun was apparent at the scene. Gov't Brief at 70. This argument must be rejected. The trial evidence described multiple active participants in Quijada's killing – Amaya, Marroquin, and Mr. Martinez – who used multiple weapons – the gun, a machete, and another smaller knife. A. 16, 71-73, Tr. 2301-02. No evidence identified Mr. Ortega as a participant in the killing. The mere fact that Quijada suffered a variety of different injuries does not justify a jury finding that Mr. Ortega inflicted any of those wounds.

The trial evidence did not establish that Mr. Ortega had the requisite "foreknowledge" of a gun's use in Quijada's killing to support his conviction on count twenty-one.

8

## POINT III

### MR. ORTEGA JOINS IN THE ARGUMENTS OF MR. MARTINEZ CONCERNING THE ANONYMOUS JURY

Mr. Ortega incorporates and joins in the arguments of co-defendant-appellant Heriberto Martinez concerning the unfair prejudice resulting from the empanelling of an anonymous jury. Such prejudice requires a reversal of the jury's entire verdict.

## POINT IV

### THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THAT THE KILLING OF QUIJADA WAS DONE TO FURTHER OR MAINTAIN MR. ORTEGA'S POSITION IN THE RICO ENTERPRISE

Mr. Ortega incorporates and joins in the arguments of his co-defendant Martinez concerning the sufficiency of the evidence to support the charges of murder and conspiracy to murder in aid of racketeering. Specifically, counts nineteen and twenty of the indictment charged Mr. Ortega with conspiring and participating in the murder of Quijada in aid of racketeering, A. 34-35, which required that the jury find beyond a reasonable doubt that Mr. Ortega participated in Quijada's murder for the purpose of maintaining or increasing his position in the MS-13 racketeering enterprise. However, the evidence does not support such a finding.

9

When a murder was committed without proper authorization from the enterprise and results in the enterprise targeting the killer for death himself due to his violation of the enterprise's rules, it is not a murder done to enhance or maintain the killer's position in the enterprise. United States v. Bruno, 383 F.3d 65, 84-85 (2d Cir. 2004) (reversing conviction for murder in furtherance of racketeering when evidence showed killing was "in contravention of Genovese Family protocols and . . . **decreased** [defendant's] standing in the Genovese Family.") (emphasis added). Here, the evidence is clear that Quijada's killing was done in contravention of MS-13's rules and resulted, not in enhancing Mr. Ortega's position in MS-13, but in MS-13 authorizing his own murder for breaching its rules.

One of MS-13's stronger rules, as described in the trial testimony, was to not kill other gang members. Tr. 329. In order for an MS-13 member to be legitimately targeted for killing by other gang members, there had to be a formal meeting of gang leaders and a decision made to authorize the killing. Tr. 368. Such authorizations are called "green lights" – a gang member who has a green light may be killed by another gang member at any time. Tr. 330.

10

As cooperating witness Sosa testified, in the absence of a "green light," the murder of a fellow MS-13 member is a violation of the gang's rules:

> Q.     When a MS-13 member kills a fellow MS-13 member without there being a green light on that MS-13 member, then the killer is not doing something sanctioned by the gang.
>
> A.     That's right.  Unless he has a reason.

Tr. 479.

> Q.     And if there was no green light on the member who got killed, then the people who killed that person can have a green light put on themselves.  Right?
>
> A.     That's right.
>
> Q.     So rather than enhance that person, that killer's position within MS-13, it actually could result in his own death.  Right?
>
> A.     That's right.

Tr. 480.

Mr. Ortega, as an MS-13 member, would have been well aware of his gang's rules and that killing another gang member would not enhance his position with the gang, but would rather violate the gang's rules and make him likely to be targeted for killing himself.  And that was in fact what happened, according to Sosa, who testified about a conversation with Mr. Ortega:

> Q.     Who wanted to put a green light on him [Mr. Ortega]?

11

A. He [Mr. Ortega] said that the Sailors.

Q. The Sailors, that's a clique of the MS-13?

A. Yes.

Q. And why did he say that the Sailors wanted to put a green light on him?

A. He said that the Sailors had been talking with the homies down in El Salvador, and that they had been saying that they had killed a homie, and that's why they wanted to put a green light on him.

Q. What was the problem with killing a homie?

A. Because you're not supposed to kill him.

Q. Is that one of the rules of the gang?

A. They should have waited to get a green light to kill him. But I think at the moment they didn't know, the other people didn't know they were going to kill him. Only they knew.

A. 46-47. Tellingly, When Mr. Ortega was arrested, he told the

officers he was glad that they, and not his gang, had found him.

A. 131. Carla Santos, an MS-13 associate, also testified that

participants in Quijada's killing were themselves "green lighted"

because Quijada's killing was not sanctioned by the gang. Tr. 945.

Because the evidence did not support any finding that the Quijada

murder was done to enhance or maintain Mr. Ortega's position in MS-13,

12

and rather decreased his position and violated MS-13's protocols, his convictions on counts nineteen and twenty must be reversed.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in his opening brief, Carlos Ortega's conviction on all counts should be vacated and the case remanded for a new trial, or in the alternative, his convictions on counts nineteen, twenty and twenty-one should be vacated and his case remanded for resentencing.

Dated:  New York, New York
   July 21, 2015

       Respectfully submitted,

       LAW OFFICES OF LONDON & ROBIN

       By:    /s/
          IRA D. LONDON
          AVROM ROBIN

       99 Park Avenue, Suite 1600
       New York, NY 10016
       Tel:    212-683-8000
       Fax:    212-683-9422
       Email:   iradlondon@aol.com
          avrom@mindspring.com

       *Attorneys for Defendant-Appellant*
        *Carlos Ortega*

cc:   All Counsel via ECF

13